Suzanne M. BLANK, Guardian ad Litem for Michael Gronquist, and also for Asa Gronquist, Andrew Gronquist and Sarah Gronquist, minor children of Michael Gronquist, Plaintiffs-Respondents,†

v.

USAA PROPERTY & CASUALTY INSURANCE COMPANY, Defendant-Appellant, ††

William J. ADNEY and Mid America Mutual Life Insurance Company, Defendants.

Court of Appeals

*No. 95–1806. Oral argument January 23, 1996.—Decided February 20, 1996.*

(Also reported in 546 N.W.2d 512.)

†Petition to review denied.
††Petition to cross-review denied.

271

On behalf of defendant-appellant, the cause was submitted on the briefs of *Eric J. Magnuson* and *Stephen K. Warch* of *Rider, Bennett, Egan & Arundel, P.L.L.P.* of Minneapolis, Minnesota, and orally argued by *Eric J. Magnuson*.

On behalf of plaintiff-respondent, the cause was submitted on the brief of *Kenneth A. Knudson* and *Kyle H. Torvinen* of *Hendricks, Knudson, Gee & Hayden, S.C.* of Superior and orally argued by *Kenneth A. Knudson*.

On behalf of Civil Trial of Wisconsin and Wisconsin Insurance Alliance, an amicus curiae brief was filed by *Kristina M. Bourget* of *Kelly & Ryberg, S.C.* of Eau Claire.

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. USAA Property & Casualty Insurance Company, after rejecting a pretrial offer of settlement for its liability policy limits of $100,000, appeals a judgment awarding the plaintiff double costs and prejudgment interest under § 807.01(3) and (4), STATS., calculated upon the entire $7,500,000 judgment against USAA and its insured.[1] USAA rejected the offer to settle for its policy limits because plaintiff refused to also release its insured, William Adney. The plaintiff won a $7,500,000 verdict for catastrophic injuries attributable to Adney's negligent driving while intoxicated. The novel issue is whether § 807.01(4) contemplates penalty interest upon the entire amount of the verdict or whether interest "on the amount recovered" includes only the amount payable by USAA pursuant to its insurance policy. We conclude that the penalty interest applies only to the amount the plain-

---

[1] Section 807.01, STATS., provides in part:

(3) After issue is joined but at least 20 days before trial, the plaintiff may serve upon the defendant a written offer of settlement for the sum, or property, or to the effect therein specified, with costs. If the defendant accepts the offer and serves notice thereof in writing, before trial and within 10 days after receipt of the offer, the defendant may file the offer, with proof of service of the notice of acceptance, with the clerk of court. If notice of acceptance is not given, the offer cannot be given as evidence nor mentioned on the trial. If the offer of settlement is not accepted and the plaintiff recovers a more favorable judgment, the plaintiff shall recover double the amount of the taxable costs.

(4) If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04 (4) and 815.05 (8).

tiff recovered from the insurer under its policy of insurance.

As a threshold issue, USAA also argues that the offer of settlement was invalid because it did not have a "full and fair" opportunity to evaluate it.[2] The argument is premised on the notion that an insurer who accepts an offer of settlement without settling the claim against its insured is exposed to a bad faith claim. Under the facts presented, there was no legitimate concern for a bad faith claim and USAA's refusal to accept the offer subjected it to the provisions of § 807.01, STATS.

Because we conclude that this statute envisions a penalty only upon the amount recoverable against the party to whom the offer was directed, in this case $100,000 from USAA, we affirm that part of the judgment imposing liability for interest and double costs under the statute, but reverse and remand for recalculation of the amount due.

## BACKGROUND

Michael Gronquist was profoundly and permanently injured in an automobile accident in August 1991. Gronquist was driving across the Blatnik Bridge between Duluth, Minnesota, and Superior, Wisconsin,

---

[2] USAA is joined in this argument by amicus curiae brief of the Civil Trial Counsel of Wisconsin and the Wisconsin Insurance Alliance. The amicus brief additionally argues that the offer was invalid as a joint offer from several plaintiffs for an aggregate sum, noting the offer was from the guardian ad litem representing the entire Gronquist family. We do not address the aggregate offer argument because it is raised for the first time on appeal. *Wirth v. Ehly*, 93 Wis. 2d 433, 443-44, 287 N.W.2d 140, 145-46 (1980). Counsel for USAA conceded at oral argument that it was not relying upon this argument.

when his car collided with a vehicle driven by USAA's insured, Adney. Adney, intoxicated at the time, was proceeding across the bridge in the wrong lane, moving against oncoming traffic. There was no question that Adney would be found predominately, if not totally, liable for negligently causing the accident.

At the time of the accident, USAA insured Adney with a liability policy with $100,000 per person, $200,000 per accident policy limits. Adney had no significant assets. USAA's adjuster determined that the damages from the accident would greatly exceed the $100,000 per person policy limit. Before any litigation was commenced, USAA tendered its policy limits to plaintiff, asking in exchange for a release of both insurer and insured. This tender was repeated a month later, and neither was accepted. After plaintiff commenced suit, plaintiff offered to settle with USAA for the $100,000 policy limit without releasing Adney. USAA rejected plaintiff's offer, claiming that it would be inconsistent with its obligations to Adney to pay the policy limits without obtaining his release. The case went to trial, and a jury awarded plaintiff $7,500,000.

Following the trial, plaintiff requested an award, pursuant to § 807.01, STATS., of double costs and 12% interest against USAA on the entire amount of the jury verdict. The trial court entered a judgment against USAA in the amount of $2,396,696.44, including its $100,000 policy liability, double costs and 12% interest on the entire jury verdict.

## VALIDITY OF OFFER OF SETTLEMENT

We first address the challenge to the validity of plaintiff's offer of settlement. The offer of settlement, § 807.01, STATS., statute has been examined in a number of contexts other than that before us now. *See*

*DeMars v. LaPour*, 123 Wis. 2d 366, 369-70, 366 N.W.2d 891, 893 (1985). *DeMars* recognized the validity of the rationale of an earlier court of appeals decision, *White v. General Cas. Co.*, 118 Wis. 2d 433, 348 N.W.2d 614 (Ct. App. 1984). *DeMars* agreed that the offer of settlement statute is not satisfied where multiple plaintiffs make a single offer of settlement to the defendants. *Id.* This is so because a joint offer of settlement from several plaintiffs makes it difficult for the defendant to evaluate the offer; an aggregate jury award might exceed the settlement offer amount, but the damages awarded to one or more of the individual plaintiffs might be lower than the amount the defendant might have considered a proper settlement amount for a particular plaintiff. *Id.* USAA did not raise this issue in this case. *See* note 2. Other cases have refused to apply the statute where the offer of settlement was made by a plaintiff to multiple defendants whose liability was predicated on different acts of negligence. *Wilber v. Fuchs*, 158 Wis. 2d 158, 461 N.W.2d 803 (Ct. App. 1990). A similar rationale was applied: The individual defendant did not have a fair opportunity to evaluate his or her individual exposure. *Id.* at 165, 461 N.W.2d at 805.

USAA and the amicus would have us apply the "fair opportunity to evaluate" rationale to void plaintiff's offer here. They argue that it is unfair to subject a defendant to the dilemma of a potential statutory penalty for refusing the offer or a potential bad faith claim for accepting it. We think the dilemma is illusory. We see no reasonable possibility of a bad faith claim under these facts. We need not go so far as to hold that a prompt tender of policy limits by an insurer will invariably preclude a bad faith claim. Rather, we hold only that acceptance of an offer of settlement directed only

at the insurer for its policy limits, after the insurer's reasonable efforts to settle the claim against its insured have been refused, creates no reasonable grounds to fear a bad faith claim.

USAA concedes the absence of Wisconsin precedent for a bad faith claim under the circumstances. It does refer to decisions in other jurisdictions. We have examined those decisions and determine that they do not support the contention for which they are cited.

*Pareti v. Sentry Indem. Co.*, 536 So 2d 417, 424 (La. 1988), includes this broad and general statement:

> [A]ny payment of the policy limits which does not release the insured from a pending claim (e.g., unilateral tender of policy limits to the court, the claimant or the insured), even if sufficient to terminate the duty to defend under the wording of the policy involved, raises serious questions as to whether the insurer has discharged its policy obligations in good faith.

However, reading this statement in context discloses that the Louisiana Supreme Court had reference to a hypothetical case where the value of the injured plaintiff's claim is close to the policy limits, and the insurer makes no reasonable effort to include the release of the insured, especially where tender of policy limits may avoid an insurer's duty to defend.[3] In those circumstances, Wisconsin may well agree that bad faith is implicated. *See Alt v. American Family Mut. Ins. Co.*, 71 Wis. 2d 340, 348, 237 N.W.2d 706, 712 (1976): "Since [ordinary diligence] is the accepted stan-

---

[3] There is no dispute that USAA performed its duty to defend. It defended against the plaintiff's claims at trial and provided Adney with independent counsel in light of his liability for damages in excess of coverage.

dard, an insurance company, in which is vested the exclusive control of the management of a case, breaches its duty when it has the opportunity to settle an excess liability case within policy limits and it fails to do so. Where reasonable efforts by an insurer would create the opportunity to pay its policy limits and obtain the release of the insured, it should do so." That is not the case here; USAA's attempts to obtain the release of its insured were twice refused because the plaintiff's losses were far beyond the policy limits and were caused by an insured whose liability could not be doubted.

USAA also cites a statement from a California case: "Moreover, it is generally recognized that such an unconditional payment [not in full settlement of plaintiff's claim], which has the effect of bankrolling a plaintiff's case against the insured, is not made in good faith." *State Farm Mut. Auto. Ins. Co. v. Crane*, 266 Cal. Rptr. 422, 427 (Cal. Ct. App. 1990) (citing *Pareti*, 536 S.2d at 422-23).

Without an unnecessary recitation of the complex facts and circumstances of that and other cases cited, the statement is dictum. More importantly, no cases recognize a bad faith claim where the acceptance of an offer of settlement follows rejection of the insurer's reasonable effort to settle a claim against its insured where the damages are plainly far in excess of policy limits and liability is not in doubt.

In summary, a valid bad faith claim in Wisconsin requires proof of a significant disregard of the insured's interest. *Warren v. American Family Mut. Ins. Co.*, 122 Wis. 2d 381, 385-86, 361 N.W.2d 724, 727 (Ct. App. 1984). USAA's acceptance of the plaintiff's offer of set-

tlement would not be a significant disregard of Adney's interest.

## THE MEANING OF § 807.01(4), STATS.

Next, if we construe the plaintiff's offer as valid, USAA and the amicus contend that the offer of settlement statute, § 807.01, STATS., does not contemplate penalty interest on the entire verdict awarded against the insured. We agree.

The construction of a statute presents a question of law this court considers without deference to the trial court. *State v. Pham*, 137 Wis. 2d 31, 34, 403 N.W.2d 35, 36 (1987). A statute is ambiguous if reasonably well-informed persons could disagree about its meaning. *Dukish v. Reid Boiler Works*, 151 Wis. 2d 769, 772, 445 N.W.2d 746, 748 (Ct. App. 1989). The purpose of statutory construction is to achieve a reasonable construction that will effectuate the legislature's intent. *Dewey v. Dewey*, 188 Wis. 2d 271, 274, 525 N.W.2d 85, 90 (Ct. App. 1994). We can determine the legislative intent of the statute through examination of the statute's scope, history, context, subject matter and object to be accomplished. *Hake v. Zimmerlee*, 178 Wis. 2d 417, 421, 504 N.W.2d 411, 413 (Ct. App. 1993). The objective of § 807.01, STATS., is to encourage pretrial settlement and avoid delays. *See Howard v. State Farm Mut. Auto Liab. Ins. Co.*, 70 Wis. 2d 985, 995, 236 N.W.2d 643, 647-48 (1975). The purpose of imposing costs and interest under subsecs. (3) and (4) is punitive. *Gorman v. Wausau Ins. Cos.*, 175 Wis. 2d 320, 329, 499 N.W.2d 245, 249 (Ct. App. 1993).

We conclude that § 807.01, STATS., is ambiguous. It could mean what the plaintiff contends it plainly says:

"amount recovered" means amount awarded by verdict; these words are unqualified by any limitation and refer to the entire damages recovered. Conversely, as USAA argues, "amount recovered" raises the question "recovered from whom"? The answer, it suggests, is that the legislative intent can only be fulfilled if "amount recovered" is construed to mean recovered from the party who improvidently refused the offer. We agree with USAA.

In *White*, 118 Wis. 2d at 439, 348 N.W.2d at 617, we held that a construction that would *force* a settlement rather than merely *encourage* one is not a proper construction of the statute. It is therefore fair to ask: Where the insurer provides modest policy limits, where the insured's liability is fairly debatable or even highly debatable, and where the damages are manifestly immense, what insurer could refuse an offer of settlement? Were we to adopt the plaintiff's interpretation of § 807.01(4), STATS., the consequence for trying a valid liability issue may be an added liability for millions of dollars of interest.

Plaintiff, however, makes another argument to support its interpretation. It suggests that under our interpretation of § 807.01(4), STATS., the plaintiff would have been better off making no offer of settlement, even though USAA plainly should have accepted it. Plaintiff's contention is premised upon an assumption that § 814.04(4), STATS., imposes interest against an insurer on the entire verdict from the time of verdict until judgment, regardless of the insurer's policy limits.[4] If

---

[4] Section 814.04(4), STATS., provides: "Interest on verdict. Except as provided in s. 807.01(4), if the judgment is for the recovery of money, interest at the rate of 12% per year from the time of verdict, decision or report until judgment is entered shall be computed by the clerk and added to the costs."

the plaintiff's premise were true, then plaintiff would have been better off making no offer.[5]

We cannot agree with plaintiff's premise. Section 814.14(4), STATS., does not impose interest on the verdict upon the insurer for sums in excess of policy limits. The statute merely directs the clerk how to compute the interest on the verdict; contrary to plaintiff's contention, whether the insurer and not the insured is to pay this interest depends upon the terms of their insurance contract.

*Nichols v. USF&G Co.*, 13 Wis. 2d 491, 501, 109 N.W.2d 131, 136-37 (1961), states: "Whether the entire amount of interest on the verdict should be allowed against the insurer when the amount of recovery exceeds policy limits seems to us on principle to depend upon the language of the policy."

*McPhee v. American Motorists Ins. Co.*, 57 Wis. 2d 669, 672-73, 205 N.W.2d 152, 155 (1973), says: "Whether a liability insurer is liable for interest on that portion of a judgment received against the insured by a third party which is in excess of the amount of the policy limits depends upon the language used by the parties in their contract of insurance." *Knoche v. Wisconsin Mut. Ins. Co.*, 151 Wis. 2d 754, 761, 445 N.W.2d 740, 743 (Ct. App. 1989) (citing *McPhee*), holds in relevant part: "Wisconsin Mutual is liable for interest [in excess of its policy limit] because under its contract it is liable for interest on the entire amount . . . ." Whether

---

[5] Applying § 814.04(4), STATS., where the time between verdict and entry of judgment was 49 days: $7,500,000 (the entire verdict) × 49/365 × 12% = $120,822.

Applying § 807.01(4), STATS., on the other hand, where the time between offer of settlement and payment of the policy limits was 904 days: $100,000 (the offer of settlement amount) × 904/365 × 12% = $29,721.

USAA's policy includes language making it liable for interest for the amount awarded in excess of its policy limits from the time of verdict is not before us on appeal.

Although both parties discuss the holding of *American Motorist Ins. Co. v. R & S Meats, Inc.*, 190 Wis. 2d 197, 526 N.W.2d 791 (Ct. App. 1994), we think it does not alter the outcome here. In *American Motorist*, the issue was whether 12% interest calculation of § 807.01(4), STATS., on the "amount recovered" included the double costs added to the judgment of damages under § 807.01(3). We held that interest was not calculated on the double costs. We reasoned that "amount recovered" and "judgment" must mean something different because both terms were used in the same sentence, and therefore while double costs were included within the "judgment," the "amount recovered" to which the interest is applied does not include double costs. *Id.* at 214-15, 526 N.W.2d at 798.

Our construction of the statute is consistent with the reasoning of *American Motorists*. We read § 807.01(4), STATS., to provide that because the plaintiff recovered a judgment *against the party to whom the offer was made* equal or greater than the sum offered in settlement, plaintiff is entitled to 12% annual interest on the amount recovered *against the party to whom the offer was made*. As was true in *American Motorists*, the judgment against the insurer does not include the double costs awarded in the judgment.

Section 814.04(4), STATS., provides that interest is payable at 12% in all cases from verdict to entry of judgment "except as provided in s. 807.01(4) . . . ." This means in this case that the clerk excludes from the calculation of interest under § 814.04(4) that sum to which 12% interest has already been applied as a pen-

alty, in this case the $100,000 judgment against USAA. The separate issue whether USAA has contracted to pay the § 814.04(4) interest in the entire verdict as addressed in the *McPhee* line of cases is not before us on appeal.

In conclusion, there was no potential for a bad faith claim that rendered plaintiff's offer of settlement unenforceable. Section 807.01(4), STATS., imposes penalty interest upon the insurer for the amount recovered against it under its policy limits from the date of the offer. Whether the insured is separately liable for interest on the remaining verdict from the date of verdict under § 814.04(4), STATS., based upon the terms of its policy is not decided.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded. No costs on appeal.